961 F.2d 1409
 Prudencio CHAVEZ, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; United
States Department of Labor; Todd Shipyards
Corporation; Aetna Casualty and Surety
Company, Respondents.
TODD SHIPYARDS CORPORATION; Aetna Casualty and Surety
Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS;
Prudencio P. Chavez, Respondents.
 Nos. 90-70687, 90-70692.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1992.
Decided April 15, 1992.
 
 Daniel F. Valenzuela, Yvonne A. Greve, Samuelsen, Gonzalez, Valenzuela & Sorkow, San Pedro, Cal., for appellants.
 Diane L. Middleton, Yvette A. Boehnke, Law Offices of Diane L. Middleton, San Pedro, Cal., for claimant-appellee.
 Janet R. Dunlop, Samuel J. Oshinsky, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent, Director, Office of Workers' Compensation Programs.
 Joshua T. Gillelan, Deputy Atty. Gen., U.S. Dept. of Justice, Washington, D.C., argued for respondents-petitioners.
 Petitioner for Review of an Order of the Benefits Review Board.
 Before: SCHROEDER, REINHARDT, and KLEINFELD, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 This is a most complicated case. It is not one in which the question is whether the claimant is entitled to compensation--that question has already been decided. Instead, the question is whether the employer, Todd Shipyards, is entitled to recompense should the worker, Prudencio Chavez, recover in tort for some of his injuries. In addition, issues have arisen, regarding whether Chavez has waived his right to workers' compensation payments from Todd and whether the dispute regarding set-off is ripe for agency consideration, that threaten to terminate the proceeding prematurely. We will address these issues sequentially, after a brief review of the facts.
 
 The Facts
 
 2
 During Chavez's employment with Todd from 1954 to 1980, he was exposed to asbestos, dust, smoke, fumes, and high levels of noise. In January of 1980, Chavez left his job with Todd because of his inability to perform his work duties due to both asbestosis and hypertension. Chavez filed a claim for permanent total disability compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. Chavez's claim was heard by Administrative Law Judge John Evans. Judge Evans awarded Chavez permanent total disability benefits finding the combined cause to be both hypertension and asbestosis.
 
 
 3
 Judge Evans also found that Todd was entitled to Section 8(f) relief. Section 8(f) of the LHWCA provides that if total permanent disability is caused by an injury combined with a pre-existing condition, the employer pays only 104 weeks of compensation. Thereafter, the compensation payments are made by the Special Fund. 33 U.S.C. § 908(f). Section 8(f) relief is available if (1) the claimant had an existing permanent partial disability which (2) contributed to his permanent total disability, and (3) the existing permanent partial disability was manifest to the employer prior to the injury that is the basis for the compensation claim. Director, OWCP v. Cargill, Inc., 709 F.2d 616, 619 (9th Cir.1983). There is no requirement that the pre-existing disability arise from a work-place injury, and the first injury may occur either prior to, or in the course of, the employment relationship during which the total disability arose. See Lawson v. Suwanee Fruit & S.S. Co., 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949). Judge Evans found that all three of the 8(f) conditions were met. However, although the opinion seems to suggest that hypertension, and not asbestosis, caused the preexisting partial disability, there is no specific finding to that effect; nor did the ALJ specify whether the hypertension, the asbestosis, or both were work-place related. Finally, the ALJ did not determine the extent to which the total disability was attributable to each of the contributory causes. The only question before Judge Evans was whether Chavez was totally disabled, and he found that Chavez was, based upon the combined effects of hypertension and asbestosis. Judge Evans did not decide and was not called upon to decide the extent to which each of the two diseases contributed to the disability, or were work related. In any event, Todd has paid permanent and total disability benefits to Chavez for 104 weeks, and the Special Fund has paid his benefits since that time.
 
 
 4
 Chavez also filed a civil suit against various asbestos manufacturers, suppliers, and distributors. Chavez was represented in the third-party suit by Roman Silberfeld ("Silberfeld") of the firm of Simke, Chodos, Silberfeld & Stoll ("Simke"). Two of the defendants in this third-party action were Keene Corporation and Keene Building Products Corporation ("Keene") and Armstrong World Industries, Inc. formerly known as Armstrong Cork Company ("Armstrong"). Chavez's claims were consolidated with numerous similar actions against the defendants brought by other plaintiffs, and his case, by chance, served as the eponymous action. On August 16, 1983, a Good Faith Settlement Order was filed in the Superior Court of California purportedly approving a "good faith settlement" between Keene and asbestos plaintiffs, including Chavez. On June 5, 1984, a Notice of Order purportedly approving a "good faith settlement" between Armstrong and Chavez was filed in the Superior Court of California.
 
 
 5
 On June 19, 1986, a hearing was held before Administrative Law Judge Henry Lasky to determine whether such Good Faith Settlement Orders served to terminate Chavez's right to compensation under Section 33(g) of the LHWCA because Chavez failed to get Todd's approval before entering into a third-party settlement. Additionally, the hearing was held to determine whether Todd was entitled to a full or partial lien on any proceeds of the third-party litigation based on the LHWCA payments it had made and the percentage of Chavez's total disability attributable to asbestosis.
 
 
 6
 At the June 19 hearing, the Keene and Armstrong Good Faith Settlement Orders were entered into evidence. ALJ Lasky allowed testimony by Chavez that he had never received any settlement proceeds or signed any releases from any asbestos company. Silberfeld testified that, as Chavez's asbestos attorney, he had never agreed to any settlement with Keene or Armstrong and that Chavez's name was mistakenly included in the Good Faith Settlement Orders because Chavez was the "lead plaintiff" in the Simke asbestos cases. Additionally, ALJ Lasky admitted declarations by Neil H. Brown ("Brown"), representing Armstrong, and Catherine Hunt Ruddy ("Ruddy"), representing Keene, into evidence. These declarations stated that Chavez's case had not been settled. The notice and order were on the stationary of Armstrong's and Keene's attorney's, not Chavez's, and do not include any signature or approval lines filled in by Chavez or his attorney. The order lists six pages of plaintiffs' names. Todd objected to the admission of the testimonial evidence of Chavez and Silberfeld and the declarations of Brown and Ruddy based on the parol evidence rule. ALJ Lasky, however, allowed the evidence.
 
 
 7
 Also at the hearing before ALJ Lasky, Dr. Dahlgren, Chavez's treating physician testified that Chavez's disability was 75% due to hypertension and 25% due to asbestosis. Chavez claims that because of such apportionment, Todd should only be reimbursed for 25% of its compensation payments to Chavez. ALJ Lasky decided the issue in favor of Todd, holding that apportionment was not appropriate and that Todd was entitled to full reimbursement for its compensation payments.
 
 
 8
 On appeal to the Benefits Review Board of the Department of Labor ("BRB"), the Board held that the ALJ properly admitted the extrinsic evidence because it was not used to attack the state court judgment, but to aid in determining the existence vel non of an actual settlement in Chavez's own case. The Board also found that there was substantial evidence supporting the ALJ's finding that no settlement occurred between Chavez and the asbestos defendants. Finally, the Board held that the issue of set-off was not ripe because no third-party settlement existed. The Board, therefore, vacated the part of the ALJ's decision relating to the apportionment question.
 
 Settlement
 
 9
 Todd argues that Chavez entered into a settlement with some of the asbestos manufacturers and that this bars him from receiving compensation under § 33(g)(1) of the LHWCA. The ALJ rejected this claim because he found that no settlement existed between Chavez and any third-party asbestos company. The BRB affirmed. The BRB must affirm the findings of the ALJ if there is substantial evidence in the record to support his findings. Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1284 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). We review the BRB's decision for errors of law and adherence to the substantial evidence standard. Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980).
 
 
 10
 Here, it is clear that substantial evidence does support the ALJ's finding. First, there is no evidence of any actual settlement agreement executed by the parties. Second, Chavez testified that he had not received any settlement amounts from any asbestos company. Third, Silberfeld testified that he had not agreed to any settlements on behalf of Chavez and that any checks received were returned to the proper parties. Fourth, both Brown and Ruddy declared that no settlement agreement had been reached with respect to Chavez and that they were not aware of any releases signed by Chavez. This evidence is more than enough to support Judge Lasky's finding that no settlement existed and that Chavez was not barred from compensation under Section 33(g) of the LHWCA.
 
 
 11
 Todd asserts two legal errors as the basis for reversal of the BRB. First, it claims that the collateral estoppel effect of the good faith settlement order entered by the California superior court requires a finding that Chavez did enter into a settlement agreement. Even assuming that collateral estoppel principles are applicable to LHWCA administrative proceedings, but cf. Western Oil and Gas Ass'n v. United States EPA, 633 F.2d 803, 809-10 (9th Cir.1980) (refusing to apply collateral estoppel in an EPA proceeding), the state court action does not preclude the ALJ's finding. The motion before the California court was for an order that Keene's settlements were in good faith, so that Keene could, by entering into them, protect itself against claims for contribution by other asbestos manufacturers under the California law regulating contribution among joint tortfeasors. The order did not adjudicate whether Chavez or the other six pages of plaintiffs had settled, only that if they did, it would be in good faith from the point of view of the settling defendants. Collateral estoppel, or issue preclusion, does not apply where the issue said to give rise to it was not essential to the previous judgment and was not litigated. See Restatement (Second) of Judgments § 27. The existence of the good faith settlement order is at most circumstantial evidence that a settlement was agreed upon; it is neither a settlement nor a judicial finding that a settlement exists. It thus is not entitled to the collateral estoppel effect urged by Todd. See Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1357 (9th Cir.1985) (en banc).
 
 
 12
 Next, Todd argues that the ALJ made an error of law in allowing Chavez to introduce extrinsic evidence to demonstrate that no settlement had been executed. Specifically, Todd asserts that the extrinsic evidence was offered to interpret the allegedly ambiguous Good Faith Settlement Orders and so admission of the evidence violated the parol evidence rule.
 
 
 13
 Assuming that the parol evidence rule applies to LHWCA administrative proceedings, Todd's argument nonetheless fails. The parol evidence rule is a doctrine of contract law, not evidence, see 3 Corbin on Contracts § 573, and "[s]tripped of its numerous exceptions ... generally prohibits the admission of extrinsic evidence to vary the terms of a written integrated contract." United States v. Hub City Volkswagen, Inc., 625 F.2d 213, 214 (9th Cir.1980). Todd's documentary evidence, a court order determining that Keene's settlement with Chavez and others was in good faith, was circumstantial evidence from which the inference could be drawn that a contract had been entered into between Chavez and Keene, but it was not a contract, and the parol evidence rule would not prevent Chavez from offering evidence, as he did, that no such contract was ever made. See id. The letter from Armstrong's lawyer to Chavez's, with Chavez's lawyer's "agreed and acknowledged" endorsement, recited that "the real purpose of this confirmation letter" was to confirm an agreement regarding three cases other than Chavez's, although it recited in passing that Chavez's case had been settled, so it too is most fairly viewed as circumstantial evidence that an agreement had been made at some other time to settle Chavez's case. As Corbin explains, "we need not begin excluding parol evidence until we know that a contract has been made," see Corbin at § 577, and the ALJ quite properly admitted evidence to determine whether Chavez and the asbestos defendants had made a contract to settle, see Corbin at § 573. In essence, the settlement orders are evidence that a settlement existed, while the extrinsic evidence is evidence that one did not. The parol evidence rule has no application in such a case. See Boeing Company v. U.S.A.C. Transport, Inc., 539 F.2d 1228, 1230 (9th Cir.1976) (contract is evidence that an agreement existed, but extrinsic evidence may be introduced to demonstrate that one did not); accord, Starling v. Valmac Indus., Inc., 589 F.2d 382, 386 (8th Cir.1979). For this reason, the extrinsic evidence was properly admitted by the ALJ to prove the nonexistence of a settlement agreement between Chavez and third-party asbestos companies.
 
 
 14
 In sum, the ALJ's finding that no settlement agreement existed is supported by substantial evidence and the ALJ did not commit legal error. The BRB was correct to affirm that finding, and we affirm the BRB.
 
 Ripeness
 
 15
 We turn next to the BRB's conclusion that the apportionment issue is not ripe. As an initial matter, we note that, to the degree that they are applicable at all, ripeness concerns should be given less weight in agency adjudications than in judicial ones. See Central Freight Lines v. ICC, 899 F.2d 413, 417-19 (5th Cir.1990); California Ass'n of Physically Handicapped, Inc. v. FCC, 778 F.2d 823, 826 n. 8 (D.C.Cir.1985). The ripeness doctrine is, at least partially, derived from Article III limitations on federal judicial power, limitations obviously inapplicable to administrative agencies. Thus, the Fifth Circuit has held that the Director of the Office of Workers' Compensation Programs has standing to appeal the decisions of administrative law judges under the LHWCA despite the director's failure to meet traditional standing requirements. See Ingalls Shipbuilding Div. v. White, 681 F.2d 275, 280-88 (5th Cir.1982). It appears that no court has considered whether the doctrine of ripeness is applicable in LHWCA proceedings.
 
 
 16
 It seems unlikely that the courts will conclude that ripeness is completely inapplicable to LHWCA proceedings. Administrative adjudicators have an interest in avoiding many of the "[p]roblems of prematurity and abstractness," Socialist Labor Party v. Gilligan, 406 U.S. 583, 588, 92 S.Ct. 1716, 1719, 32 L.Ed.2d 317 (1972), presented by unripe claims. Thus, there may be cases in which the Office of Workers' Compensation Programs would be justified in abstaining on the basis of ripeness.
 
 
 17
 The apportionment issue here, however, does not present such a case. Even under the traditional ripeness analysis, the issue is ripe. The traditional analysis consists of two prongs: the fitness of the issue for review and the hardship to the parties if review is withheld. See Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Lack of ripeness will prevent review if the systemic interest in postponing adjudication due to a lack of fitness outweighs the hardship on the parties created by the postponement. See Continental Air Lines, Inc. v. CAB, 522 F.2d 107, 124-28 (D.C.Cir.1975) (en banc).
 
 
 18
 In determining whether an issue is fit for judicial decision, the court looks, in part, to whether the issue is purely legal and is sufficiently developed factually. Abbott Laboratories, 387 U.S. at 149, 87 S.Ct. at 1515; Trustees for Alaska v. Hodel, 806 F.2d 1378, 1381 (9th Cir.1986). The BRB concluded that the question of apportionment of a claimant's tort recovery was not ripe because "there have not yet been any settlements to credit." The BRB's reasoning is erroneous. The matter of apportionment presents a question of law. The only significant factual question that is not yet determinable is the amount Chavez will receive as a result of his litigation. While apportionment may depend upon the exact nature of the claimant's injuries and for which injuries he seeks legal redress, it clearly does not depend upon the amount of the tort recovery. Once a claimant has established a right to compensation payments and has additionally chosen to seek legal redress for some of his injuries, the factual predicates to an apportionment determination have occurred. Although the amount of set-off to which Todd is entitled may not be calculable prior to an actual tort recovery, the issue of apportionment is nonetheless fit for review.
 
 
 19
 Under the traditional hardship prong, it must be shown that withholding review of the issue would result in direct and immediate hardship and would entail more than possible financial loss. Abbott Laboratories, 387 U.S. at 152, 87 S.Ct. at 1517; Western Oil and Gas Association v. Sonoma County, 905 F.2d 1287, 1291 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 784, 112 L.Ed.2d 846 (1991). In this case, the ALJ found that the parties to the tort action would be unable to reach a settlement in the absence of a determination of Todd's rights to a set-off. Although the ALJ's conclusion may represent somewhat of an overstatement, the factual finding that the ability of the parties to reach a settlement with the asbestos defendants would, at the least, be substantially hindered is subject to review under the substantial evidence standard. There is enough evidence of the difficulty in reaching settlement in the absence of an answer to the apportionment question to qualify as substantial evidence. Evidence was presented that the asbestos defendants have reached settlements with other plaintiffs whose claims were originally consolidated with Chavez's, while settlement of Chavez's own claims has been delayed. There was testimony by both Chavez's lawyer in his tort action and by the lawyers for the asbestos defendants that the reason for the failure to settle Chavez's claims was the uncertainty as to the consequences under the LHWCA. It is beyond doubt that resolution of the apportionment question would break the current deadlock and greatly facilitate settlement of those claims.
 
 
 20
 The present difficulty in settling Chavez's asbestos claims adversely affects both Chavez and Todd. Chavez is delayed indefinitely from recovering in tort for the disease which ended his livelihood. Without a settlement, Todd cannot seek reimbursement for its compensation payments to Chavez--to the extent that it may be entitled to do so. Thus, the uncertainty in the apportionment question is in fact creating a practical hardship for both parties.
 
 
 21
 It is clear that any systemic interest in postponing relief is outweighed by the hardship on the parties. As Judge McGowan wrote for the D.C. Circuit, "[h]owever much the courts might prefer to resolve a particular question at another time and place, they should have a very good reason for indulging that preference, if in doing so they are refusing a petitioner's request to be relieved of an onerous legal uncertainty." Continental Air, 522 F.2d at 128. There is simply insufficient reason to warrant postponement in this case.
 
 
 22
 For the above reasons, the matter of apportionment meets the traditional ripeness standards. Any ripeness test applicable to LHWCA proceedings would certainly contain less rigorous requirements.[1] Accordingly, we must reverse the BRB's conclusion that the apportionment issue is not ripe.
 
 Apportionment
 
 23
 Several different theories of apportionment under the LHWCA are urged upon us. Todd suggests that apportionment is entirely inappropriate and that therefore the entire amount of compensatory damages Chavez receives should be set off against the compensation it must otherwise pay. Chavez suggests that, since only one quarter of his disability is due to asbestos-related injury, only that fraction of the damages should be available to Todd for set-off. Finally, the director suggests that the amount of set-off should depend not on the fraction of disability related to asbestos, but rather on the degree to which the ailments causing the disability arose from the workplace: if only the asbestosis is work-related, then, according to the director, Todd is entitled to use the entire award for set-off purposes; but if both the asbestosis and the hypertension are work-related, then Chavez would have been entitled to seek compensation for his disability from Todd based solely on the hypertension (the so-called "aggravation" rule entitle a claimant to compensation for the entire disability even though only a portion is work-related), and, therefore, Todd should not be entitled to any set-off; otherwise, the director argues, Todd would benefit from its additional act of causing Chavez to suffer asbestos-related injury as well as hypertension.
 
 
 24
 We decline to resolve the question of apportionment. First, because the BRB concluded that the question was not ripe, it did not consider it on the merits. On a question of this complexity, regardless of the fact that we do not defer to the board's expertise, we believe its views and analysis would be a material aid to our ultimate resolution of the issue. Second, at least the director's suggestion may require additional factfinding by the ALJ. Should the BRB adopt the director's approach, it may choose to order a remand. Alternatively, it may find that one or the other of the parties has waived additional fact-finding. In any event, a BRB decision on the merits would place the appeal in a completely different posture than it is now. For these reasons, we do not attempt a resolution of the apportionment issue at this time. We intimate no view on whether the BRB has any statutory authority to apportion, or whether, as the ALJ determined, apportionment is precluded by the statute.
 
 Conclusion
 
 25
 We have concluded that the BRB's decision to affirm the ALJ's finding that no settlement agreement exists must be affirmed and that the BRB's conclusion that the apportionment issue is not ripe must be reversed. Accordingly, we remand to the board for additional proceedings in conformity with this opinion. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 [1]
 We note that we do not give deference to the BRB's interpretation of the LHWCA, or to its general views on the subject of ripeness. See Port of Portland v. Director, OWCP, 932 F.2d 836, 838 (9th Cir.1991). The director agrees that we should not defer to the BRB on these matters, and asserts instead that we should give deference to his view of ripeness. He is correct as to the first point but incorrect as to the second. It is true that, in appropriate circumstances, we do defer to the director's interpretation of the LHWCA. See id. However, questions of ripeness directly affect our jurisdiction to review agency decisions. If the agency seeks to review unripe decisions, we may be unable to review its determinations; if it refuses to review ripe decisions, then the ability of claimants with otherwise ripe claims to ultimately obtain judicial review is impaired. Separation of powers problems would arise if the executive branch were to be given deference on a matter which bears so directly on the exercise of our judicial power; the LHWCA was enacted for the benefit of claimants, and the executive may not act so as to prevent claimants from seeking the relief to which they are entitled under a federal law passed for their benefit. See United States v. Providence Journal Co., 485 U.S. 693, 703-04, 108 S.Ct. 1502, 1508-09, 99 L.Ed.2d 785 (1988) (separation of powers principles require that the Supreme Court be able to review lower court decisions notwithstanding the views of the executive branch) (explaining Bob Jones University v. United States, 456 U.S. 922, 102 S.Ct. 1965, 72 L.Ed.2d 437 (1982) (order appointing amicus curiae in support of judgment)); cf. Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 796, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740 (1987) (separation of powers principles prevent executive branch from limiting ability of the judiciary to initiate contempt citations). Accordingly, we do not defer to the director on questions of ripeness for agency review