In re Frank CARDILLO, Jr. and Susan A. Cardillo, Debtors.

Frank CARDILLO, Jr. and Susan A. Cardillo, Movants,

v.

MOORE–HANDLEY, INC., Respondent.

Bankruptcy No. 93–67116.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 30, 1994.

John B. Lyle, Marietta, GA, for movants/debtors.

William L. Kidd, Duluth, GA, for Moore–Handley, Inc., respondent/creditor.

## CONTESTED MATTER

## ORDER ON MOTION FOR CONTEMPT

JAMES E. MASSEY, Bankruptcy Judge.

Frank and Susan Cardillo, the debtors in this Chapter 7 case, (the "Debtors") move for an order holding a creditor, Moore–Handley, Inc. ("Moore"), in contempt and imposing sanctions for violating the automatic stay. Without this court's approval, Moore garnished Mr. Cardillo's wages shortly after obtaining an order determining that a debt owed to Moore by Mr. Cardillo was nondischargeable. The court has yet to grant or to deny a discharge to Mr. Cardillo under 11 U.S.C. § 727. The question presented is whether the entry of a final order under 11 U.S.C. § 523 determining a debt to be nondischargeable is a denial of a discharge within the meaning of 11 U.S.C. § 362(c)(2)(C), which provides that the automatic stay does not continue after the denial of a discharge. For the reasons stated below, the court holds that Moore violated the automatic stay.

## I. STATEMENT OF FACTS

With one possible immaterial exception noted below, the facts are not disputed. On March 18, 1992, Moore obtained a judgment in the amount of $48,924.18 against Mr. Cardillo in the Superior Court of Paulding County, Georgia. When the Debtors filed bankruptcy, Moore commenced an adversary proceeding against Mr. Cardillo seeking a determination that its judgment was not dischargeable under section 523(a)(6) of the Bankruptcy Code. The bankruptcy case began as a Chapter 7, was converted to Chapter 13, and in August 1993 was reconverted to Chapter 7.

In a second count of its complaint, Moore also sought a judgment denying Mr. Cardillo's discharge pursuant to sections 727(a)(2), (3) and (4) of the Bankruptcy Code. Mr. Cardillo answered the complaint but failed to respond to discovery requests of Moore. The court granted Moore's motion to compel discovery. Mr. Cardillo then failed to comply with the order compelling discovery. Finally, on November 2, 1993, on Moore's motion, the court (Hugh Robinson, Bankruptcy Judge) struck Mr. Cardillo's answer and entered an order determining the debt embodied in the state court judgment to be nondischargeable and entered a judgment against Mr. Cardillo for the same amount as the superior court judgment as demanded in the complaint.[1]

On December 13, 1993, Moore filed in the State Court of Cobb County, Georgia a continuing garnishment against Mr. Cardillo's employer. The employer answered the summons of garnishment on January 27, 1994. Moore contends that Mr. Cardillo voluntarily resigned his employment effective January 31, 1994. In the motion for sanctions, the

1. The judgments are for the same debt, which obviously can be collected only once.

Debtors assert that Mr. Cardillo's employment was in jeopardy because of the garnishment; in their brief in support of the motion, the Debtors assert that Mr. Cardillo left his employment because of the garnishment.[2]

On January 3, 1994, Moore moved to withdraw Count II of its complaint to deny the discharge of Mr. Cardillo. In an order and notice entered on February 16, 1994, this court notified creditors and the Chapter 7 trustee that Moore had moved to withdraw the complaint to deny discharge and that the trustee or any creditor had 30 days from the date of entry within which to seek to be substituted as plaintiff. The order and notice further provided that if no party in interest sought to be substituted as plaintiff, Count II of the complaint would stand dismissed without further order of the court. Moore's counsel filed a certificate of service certifying that on February 18, 1994, he served the February 16, 1994, order and notice on all creditors and the Chapter 7 Trustee. There was no response to that order.

There is a second adversary proceeding pending against Mr. Cardillo brought by ITT Small Business Finance Corporation ("ITT"). ITT filed that action one month after Moore initiated its action. The complaint in the ITT case also contains two counts, one under section 523 and one under section 727.

## II. *CONTENTIONS OF THE PARTIES*

The Debtors contend that no provision in section 362 terminates the automatic stay upon the entry of a judgment determining a debt to be nondischargeable. They argue that permitting a creditor to execute a judgment prior to the grant of a general discharge would deny the debtor a fresh start, an important objective of the Bankruptcy Code. In particular, they say that Mr. Cardillo will be unable to afford an attorney to defend the other pending adversary proceeding brought by ITT, unless the stay remains in place. Although the Debtors allege that Mr. Cardillo left his job because of the garnishment, they show no damage arising from the alleged contempt. In lieu of a monetary

sanction for contempt, they request the court to reopen the adversary proceeding and to require Moore to prove the amount of its actual damages on its underlying claim.

Moore asserts that the automatic stay does not apply to a holder of a section 523 judgment. Its defense is that because a general discharge under section 727 does not discharge a debt not dischargeable under section 523, it makes no sense to require a creditor to wait until a general discharge is granted to prosecute and collect its claim. In support of that argument, Moore cites decisions of the United States Court of Appeals for the Sixth Circuit and a Bankruptcy Appellate Panel of the Ninth Circuit.

## III. *DISCUSSION AND CONCLUSIONS OF LAW*

### A. *The Case Law.*

The first reported appellate decision on the issue presented is *Watson v. City National Bank (In re Watson)*, 78 B.R. 232 (9th Cir. BAP 1987) (*"Watson One "*). The *Watson* case had a somewhat unusual history. By a two to one vote, the Bankruptcy Appellate Panel reversed the entry of a preliminary injunction entered by Bankruptcy Judge Lisa Hill Fenning that had prevented a creditor from executing upon a judgment determining a debt to be nondischargeable. Twenty-three days and sixty-five pages in Volume 78 of West's Bankruptcy Reporter later, Samuel L. Bufford, a different bankruptcy judge in the same case, who was apparently unaware of the appeal, let alone of the panel decision, held that the collection efforts of the creditor undertaken prior to the entry of the preliminary injunction violated the automatic stay. *Watson v. City National Bank (In re Watson)*, 78 B.R. 267 (Bankr.C.D.Cal.1987). (*"Watson Two "*). Judge Bufford viewed the violation as so serious that he awarded monetary sanctions to the debtor and further refused the creditor's request to offset the sanction award against the nondischargeable judgment. 78 B.R. at 272–73.

---

**2.** To the extent that there is a dispute concerning the effect of garnishment on Mr. Cardillo's employment, it is not material to the disposition of this motion because he claims no damages.

The United States Court of Appeals for the Sixth Circuit, relying entirely on *Watson One,* and mistakenly citing it as having reversed *Watson Two,* also held that the entry of a nondischargeability judgment modifies the automatic stay to permit collection of a debt determined to be nondischargeable. *Boatmen's Bank of Tennessee v. Embry (In re Embry),* 10 F.3d 401, 403 (6th Cir.1993). Thus, *Embry* relied on the decision of two bankruptcy judges in the Ninth Circuit, while ignoring the opinions and analysis of three other bankruptcy judges in the same circuit who reached a contrary result in the same case.

The court in *Watson One* reasoned that if the stay remained in force until a case is closed or dismissed or a section 727(a) discharge is granted, the debtor would enjoy "the opportunity to delay and/or hinder the creditor from executing upon post-petition property, which is not property of the estate, for no valid reason." *Watson One,* 78 B.R. at 234. To bolster that argument, the court pointed to section 362(b)(2), which excepts from the automatic stay the collection of alimony, maintenance and support obligations from property that is not property of the estate. It cited legislative history stating that one goal of the automatic stay is to protect the debtor's discharge, a goal not furthered if discharge can never be obtained. The court concluded that "[t]here is a lack of logic in allowing a creditor release from a discharge only to hold him in place as if he were still affected by the discharge or the prospect thereof." *Watson One,* 78 B.R. at 235.

At least one other bankruptcy court and one district court have held that nondischargeable debts are subject to the automatic stay and that attempts to collect them prior to the closing of the case, dismissal of the case or grant of a discharge, 11 U.S.C. § 362(c)(2)(C), or prior to affirmative relief from the automatic stay is a violation of that stay. *See, Dantes v. Tyhurst (In re Tyhurst),* 1992 WL 25372 (D.Kan. Jan. 9, 1992); *Miller v. Hulvey (In re Hulvey),* 102 B.R. 703 (Bankr.C.D.Ill.1988). The *Hulvey* court relied on *Watson Two,* and the *Tyhurst* court relied on *Hulvey.*

B. *Analysis of the Statute.*

■ Section 362(c)(2)(C) of the Bankruptcy Code provides in relevant part:

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

.        .        .        .        .

(C) if the case is a case under chapter 7 of this title concerning an individual ..., the time a discharge is granted or denied.

Section 727(a) provides in relevant part that "[t]he court shall grant the debtor a discharge" unless the debtor fails to meet specified criteria. Section 523 deals with the determination of the dischargeability of various categories of debts described in that section and states in relevant part that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt" in any of the specified categories.

The court in *Watson Two* observed that there are thirteen exceptions to the automatic stay listed in 11 U.S.C. § 362(b), but collection of a debt determined by a bankruptcy court to be nondischargeable under section 523 is not one of them. *Watson Two,* 78 B.R. at 270. The court then searched section 362(c), which identifies those instances when the automatic stay, though once in existence, terminates; it stated that that subsection "conspicuously lacks any termination of the automatic stay for a judgment creditor of a nondischargeability judgment." *Watson Two,* 78 B.R. at 270.

Rejecting the argument that a nondischargeability judgment constitutes a denial of discharge for purposes of section 362(c)(2)(C), the court decided that the proper analysis flowed from the nature of a nondischargeability judgment. Such a judgment has two parts: (1) a determination of the amount of the debt and (2) a declaratory judgment that the debt is not subject to discharge. The first part is the functional equivalent of the claims resolution process. The entry of an order allowing a claim does not result in relief from the automatic stay. The second part does not constitute relief from the stay either. A declaratory judgment that a debt is not subject to a discharge

"has no effect until the discharge is entered." *Watson Two,* 78 B.R. at 271.

This court adopts the reasoning of the *Watson Two* court. The use of the words "a discharge" in each of sections 362, 523, 524 and 727 supports that analysis. A debtor in a Chapter 7 case receives only one discharge or has one discharge denied: the discharge mentioned in section 727(a). Bankruptcy courts do not grant or deny "a discharge" piecemeal and do not grant or deny "discharges" to a debtor. If a discharge is granted, section 524 imposes an injunction to provide the debtor post-petition protection from acts of creditors to enforce claims as the personal liability of the debtor. If a discharge is denied, a judgment of nondischargeability of a particular debt gives a creditor no additional advantage.

Section 523 states in plain English at its very beginning that "[a] discharge under section 727 ... does not discharge an individual debtor from any debt ..." that fits in one of the categories in section 523. Thus, section 523 speaks solely to the effect of a determination of nondischargeability on a discharge *granted,* not to the effect of such a determination on the automatic stay. Section 523 itself does not grant or deny a discharge. By its very terms, it excepts a debt from a discharge under section 727. Therefore, when section 362(c)(2)(C) speaks of "the time a discharge is granted or denied," it can only be speaking of the grant or denial of a discharge pursuant to section 727. Hence, the automatic stay, unless terminated by another enumerated event in section 362 or by court order, remains in effect until a discharge under section 727 is granted or denied. 11 U.S.C. § 362.

## C. *Analysis of Watson One.*

The automatic stay imposed by section 362 gives a debtor a breathing spell and thereby promotes the bankruptcy policy of a fresh start. It also stops aggressive action of individual creditors, thereby to enforce collective action and to promote cooperation among members of the creditor body. I refer to the collective action and cooperation of creditors as the "cooperation policy." The *Watson One* court concluded that it is illogi-

cal to restrain a debtor holding a nondischargeable claim because a discharge, when granted, would not do so. That analysis ignores the cooperation policy, discussed below in more detail. In particular, it ignores the fact that other creditors remain restrained, even though their claims would be just as viable if the debtor is denied a discharge.

The *Watson One* decision is also wide of the mark in finding support for its reading of section 362(c)(2)(C) in the treatment of alimony claims. Section 362(b)(2) excludes from the automatic stay actions to collect alimony or support from property that is not property of the estate. It is section 362(b)(2) that causes that result, however, and not a reading of section 362(c)(2)(C) and section 523(a)(5) that nondischargeability equals discharge equals relief from stay. The court may as well have been saying that it was illogical to include section 362(b)(2) in the list of exceptions to the stay, because other debts determined to be nondischargeable do not get the same treatment. But, it is not illogical. A debt arising from an actual fraud, for example, is not the same as a debt for alimony. The only things they have in common are that they are debts and Congress has made them nondischargeable in bankruptcy, at least if the holder of the fraud claim timely files a dischargeability complaint. A fraud claim involves a breach of a standard of conduct important to the conduct of commerce, but that breach ordinarily does not affect the day-to-day existence of its holder. The collection of the alimony or support, however, as often as not may mean the difference between a spouse having shelter or being homeless or between a child having breakfast or going hungry. Congress has quite appropriately prescribed different treatments for different kinds of debts in a bankruptcy case. Hence, the distinct treatment of alimony claims is not relevant to an interpretation of section 362(c)(2)(C).

The BAP in *Watson One* succumbed to the temptation identified by the dissent—ruling too broadly on bad facts. As the dissent points out, the problem in that case arose because the time for objecting to the debtor's discharge expired on September 1, 1984, the

creditor obtained its judgment of non-dischargeability on October 11, 1984, but at the time of the appellate decision, in September 1987, the bankruptcy court still had not performed the ministerial function of issuing a discharge to the debtor. *Watson One,* 78 B.R. at 236. That factual setting caused the majority to state with apparent exasperation that the delay permitted the debtor to delay or hinder the creditor "for no valid reason." 78 B.R. at 234. The dissent gave the correct solution to the creditor's dilemma: move for relief from the stay. 78 B.R. at 236-37.

Here, apart from the statute's plain meaning, there is a valid reason for holding that the stay remained in place at the time that Moore executed on its judgment: Mr. Cardillo was not then entitled to a discharge. By contrast, in *Watson,* the debtor was entitled to a discharge at the time that the creditor executed on its judgment.

### D. *Policy Considerations.*

■ A major premise underlying the framework of rights and restraints in the Bankruptcy Code is that collective action promotes efficiency. It insures an opportunity to use or to liquidate the common pool of assets available to pay claims in a manner that maximizes the value of the pool. Implicit in the collective approach to resolution of disputes concerning disposition of assets, claims, priorities, and the right to discharge is that in the absence of an explicit Congressional directive, restraint on one creditor must apply to all creditors, unless lifting the stay for one creditor is necessary to prevent harm and would not unfairly prejudice the rights of the creditors that remain restrained.

■ The rules setting out priorities in distributions, debts not subject to discharge, the scope of the stay, and similar matters reflect judgments on policies concerning the resolution of competing claims against the debtor and the common pool of assets. Some policies are more important than others. The cooperation policy of encouraging collective action is one of the more important stratagems embodied in the Bankruptcy Code, because it encourages efficiency in matters of common interest and is necessary to bring order to the process.

■ Under Moore's reading of section 362(c)(2)(C), a diligent creditor holding a prepetition judgment must wait until a discharge is denied and the automatic stay lifted to pursue collection. On the other hand, a creditor with a default judgment under section 523 would have a free hand to execute on its post-petition judgment, even though that creditor publicly purports to represent all creditors in pursuing a judgment denying discharge generally. That creditor would enjoy a head start on collection over all other creditors, *an advantage that creditor would not enjoy under Georgia law.* This result would be at odds with the one of the cornerstones of the cooperation policy, which is treating similarly situated creditors alike.

■ The facts of this case illustrate the point. When Moore filed its garnishment, it had not yet moved to dismiss Count II. When it did so a few weeks later, the court provided other creditors and interested parties with an opportunity to be substituted as plaintiff on Count II of the complaint, pursuant to Fed.R.Bankr.P. 7041. Bankruptcy Rule 7041 serves an important function. It helps to enforce the cooperation policy by insuring that one creditor acting on behalf of the entire creditor body does not compromise a collective position to gain an individual advantage.

■ To be sure, Moore had the right to seek to dismiss Count II. It is not responsible for arranging the collection of the claims of others. Although no other creditor sought to be substituted as plaintiff on the section 727 count brought by Moore, it may have been because ITT is also prosecuting a complaint to deny Mr. Cardillo's discharge. If the stay is deemed lifted as to Moore and if ITT successfully challenges Mr. Cardillo's discharge, Moore would obtain an advantage that others are denied merely because of the timing of his suit and the default by Mr. Cardillo. Insofar as bankruptcy law is concerned, an otherwise dischargeable claim that may be pursued because the debtor is denied a discharge enjoys precisely the same

status as a claim not dischargeable under section 523.

Similarly, keeping the stay in place until a discharge is actually granted or denied may protect the estate in the not infrequent situation in which the debtor has fraudulently transferred property. If the creditor holding the nondischargeability judgment is free from the stay, it can pursue the fraudulent transferee under state law and thus may be competing with the trustee who may also sue the transferee. Until the trustee prevails in his fraudulent transfer action, the property in question is not property of the estate, 11 U.S.C. § 541, but if the creditor beats the trustee to the punch, it may never be.

■ Moore's reading of section 362(c)(2)(C) is contrary to the plain meaning of the words used there and elsewhere in the Bankruptcy Code to describe the effect of a discharge. To hold that a section 523 judgment is a denial of a discharge would be to encourage creditors to pursue section 523 actions where a viable section 727 action exists in order to get a head start on collection. Valuable court time would be misdirected to trying one or even several actions, where one might do. Equating a determination of nondischargeability with denial of a discharge vindicates no bankruptcy policy but instead would subtly undermine the fundamental policy of cooperation among creditors. Because the stay remained in place when Moore instituted its garnishment case, it violated the automatic stay.

### E. *Continuation of the Stay.*

The Debtors argue that the stay should remain in place to give the Debtors an opportunity to earn enough to pay lawyers to defend the ITT action. Otherwise, they contend, they will not be able to obtain a fresh start. The court need not address this argument, because the pendency of the ITT litigation prevents the issuance of a discharge and hence a lifting of the stay and Moore has made no motion to terminate the stay.

### F. *Sanctions.*

■ Although the actions of Moore in pursuing the garnishment of wages in the face of the automatic stay subjects it to sanctions, the measure of sanctions must be commensurate with the harm caused and with the need to engender respect for the law. The Debtors contend that Mr. Cardillo left his job as a result of the collection effort, but he makes no showing that he suffered any damages. Hence, no monetary sanction in favor of the Debtors for damages arising from the violation of the stay is appropriate. It is not clear whether other creditors suffered any damage; as yet, none has been shown. Nonetheless, Moore is directed to turn over to its attorney any funds obtained in the garnishment, which shall be held in escrow pending further order of this court. There has been no showing of any injury to the estate.

■ The sanction of vacating the judgment in favor of Moore is likewise not fitting. Mr. Cardillo has had more than his share of opportunities to litigate the merits of Moore's claim. To undo the judgments obtained would be to equate the type of action taken by Moore, which type one circuit court of appeals found to be proper, as the equivalent of ignoring the law altogether. This the court declines to do.

■ Under the circumstances presented, where Moore acted at a time when it sought a denial of Mr. Cardillo's discharge and where the motion for contempt properly seeks to vindicate a right granted by the Bankruptcy Code, albeit not for the benefit of creditors, an appropriate sanction is the sum of $350.00. That sum is to be paid to the Debtors' attorney, John B. Lyle, P.C., as compensation for bringing the motion, unless the Debtors have paid him for the work done in connection with the motion, in which case the balance should be a credit against the judgments.

For the foregoing reasons, it is

ORDERED, ADJUDGED AND DECREED that the Debtors' motion for contempt and sanctions is GRANTED. Debtor Frank Cardillo is hereby awarded sanctions in the amount of $350.00 to be paid by Moore–Handley, Inc. directly to the Debtors' attorney, John B. Lyle, P.C., to the extent that Mr. Lyle has not previously been paid

**154**

for bringing the motion. Mr. Lyle is directed to inform counsel for Moore–Handley, Inc. within ten days of the entry of this order whether he is owed any amount for his work on the motion. Moore–Handley, Inc. is directed to pay the amount timely claimed by Mr. Lyle up to $350.00 directly to Mr. Lyle within ten days thereafter. To the extent that the payment to Mr. Lyle is less than $350.00, any balance shall be a credit against the judgments against Mr. Cardillo. Moore–Handley, Inc. is directed to turn over to its attorney any funds obtained from the garnishment and to file with the court a report stating the amount, if any, obtained.