In re Daniel Byron CADY, Debtor,

Jeffrey Palm; Danielle Lynn Scapparo, Appellants,

v.

Daniel Byron Cady; William A. Klapperman; Alfred Siegel, Appellees.

No. 01–56735.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Jan. 3, 2003.

James A. Tiemstra, Miller, Starr & Regalia, Walnut Creek, CA, for the appellants.

William A. Klapperman, Los Angeles, CA, for the appellee.

Before CANBY, GOULD and BERZON, Circuit Judges.

**OPINION**

CANBY, Circuit Judge.

We affirm the judgment of the Bankruptcy Appellate Panel, for reasons stated in its opinion, *Palm v. Klapperman (In re Cady),* 266 B.R. 172 (B.A.P.2001). We reprint that opinion as an appendix hereto.

**AFFIRMED.**

Opinion by Judge CANBY; Dissent by Judge BERZON.

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

In my view, the opinion upon which this case hinged, *Watson v. City National Bank (In Re Watson),* 78 B.R. 232(9th Cir.BAP1987) ("*Watson I*"), was wrongly decided by the Bankruptcy Appellate Panel.

*Watson I* held that creditors who obtain judgments of nondischargeability may pursue "their claims without first seeking relief from the automatic stay imposed by Section 362." *Id.* at 232. That conclusion, in my view, cannot be squared with the statutory materials.

Section 362 of the Bankruptcy Code provides in sweeping terms that "[e]xcept as provided in subsection (b) of this section," a petition in bankruptcy operates as a stay "applicable to all entities." 11 U.S.C. § 362(a). A wide variety of actions to enforce debts of the bankruptcy petitioner are subject to the automatic stay, including, as here pertinent: "[A]ny act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title" and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §§ 362(a)(5) and (6). There then follows in Section 362(b) a list of types of actions against the debtor which are not automatically stayed. Claims that have been declared nondischargeable by a bankruptcy court are not among the eighteen kinds of listed actions to which the automatic stay does not apply.

Section 362(c), in turn, specifies with similar particularity *when* the automatic stay imposed by Section 362(a) ordinarily terminates, providing that:

(1) the stay of an act against property of the estate ... continues until such prop-

erty is no longer property of the estate; and

(2) the stay of an any other act ... continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c).

Finally, Sections 362(d) and 362(e) allow for relief from the stay upon application if, among other reasons, the property against which the creditor seeks to enforce a debt "is not necessary to an effective reorganization," and provide that the stay shall be automatically terminated if an application is made and the court does not act on the request within 30 days. 11 U.S.C. §§ 362(d) and (e).

Section 523 addresses the circumstances under which a debt is nondischargeable under the Bankruptcy Code. Section 523 also provides no exception for nondischargeable debts from the automatic stay.

The fair inference from this statutory vacuum is that a debt that is nondischargeable is *not* exempt from the automatic stay. Instead, the impact of a judgment that a debt is nondischargeable occurs when one would expect—at the time it would otherwise be discharged. At that point, the automatic stay terminates. 11 U.S.C. § 362(c)(2). There is simply no basis in the language or structure of the statute for improvising a different scheme than the one that was enacted.

*Watson I* tried creatively to fill this void maintaining that "a review of other types of claims that are not subject to the automatic stay" supports its conclusion. *Id.* at 234. I find, to the contrary, that this review supports the opposite conclusion. *Watson I* noted that "Section 523(a)(5) ex-

cepts from discharge claims for alimony and child support," while "Section 362(b)(2) precludes application of the automatic stay to such claims made against property which is not property of the bankruptcy estate." *Id.* at 234. *Watson I* then goes on to quote legislative history indicating that "[a]limony, maintenance and child support obligations" should be excepted from the automatic stay because they are excepted from discharge, *id.,* and "find[s] the same reasoning persuasive in the instant appeal." *Id.* The problem with this reasoning, of course, is that the exception from the automatic stay for alimony and child support claims that are nondischargeable appears in the statute, while a more general exception does not. *See* 11 U.S.C. § 362(b)(2). The inference that Congress intended to imply a broad exception by enacting a narrow one makes little sense. The much more sensible inference is that Congress enacted a narrow exception because otherwise the automatic stay would have been applicable to alimony and child support, and intended nothing more far-reaching.

In his dissent in *Watson I*, Bankruptcy Judge Meyers concluded:

> The *carte blanche* that the majority would grant to holders of Section 523 judgments would apparently have universal application. This is of concern since we cannot envision the various situations to which this might be applied to the detriment of the goals of the Code. I fear that the majority decision will encourage other parties to resort to self-help on the false hope that the equities of their situation will be thought enough to likewise carve out yet another exemption to the dictates of Section 362(a). This will do little to protect the integrity of the stay provisions of the Code. The complications that this decision might create seems a poor substitute to the obvious course of requiring creditors who desire to proceed to such satisfac-

tion of their judgment .... to petition for relief from stay.

78 B.R. at 236–37.

I fully concur in that judgment. Indeed, this case represents precisely such an incremental extension of *Watson*, with a concomitant further undermining of the automatic stay, that Judge Meyers feared.

Here, the abstract of the judgment, as the Bankruptcy Appellate Panel recognized, "created a cloud on title to Spyglass, a cloud which may have interfered somewhat with efforts to sell the property, had the trustee sought to do so." *In re Cady*, 266 B.R. 172, 182–83 (9th Cir. BAP2001). To account for the possibility that abuses of the kind Judge Meyers feared could proliferate, the Bankruptcy Appellate Panel in this case added:

> Where, however, there is evidence that a creditor recorded an abstract of judgment with the intent to delay or otherwise interfere with a trustee's efforts to sell estate property, or a creditor uses a recorded abstract to interfere with the administration of estate assets, such conduct will rise to the level of an automatic stay violation.

*Id.* at 183. The effect of this ruling is to introduce into the application of the automatic stay a vague standard likely to generate litigation, and thereby cost, to both bankruptcy estates and to creditors. It seems to me a far superior rule, as well as the only one consistent with the statute, to require that holders of nondischargeable judgments who desire to proceed to enforce the debt in a way that would otherwise interfere with the automatic stay affirmatively seek a modification of the stay.

For the foregoing reasons, I respectfully dissent.

# APPENDIX

266 B.R. 172
1 Cal. Daily Op. Serv. 7221, 2001 Daily Journal D.A.R. 8927
(Cite as: 266 B.R. 172)

**C**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

In re Daniel Bryon CADY, Debtor.
Jeffrey Brian Palm and Dannielle Lynn Scapparo,
Appellants,
v.
William A. Klapperman, as assignee of Prime
Filmworks, Inc.; Daniel Byron
Cady; Alfred H. Siegel, Chapter 7 Trustee,
Appellees.

BAP No. CC-01-1007-MoPB.
Bankruptcy No. SV 93-26764-AG.

Argued and Submitted June 22, 2001.
Filed Aug. 7, 2001.

*175 James A. Tiemstra, Miller, Starr & Regalia,
Walnut Creek, CA, for Jeffrey Brian Palm, Danielle
Scapparo.

*176 William A. Klapperman, Los Angeles, CA, pro
se.

Before MONTALI, PERRIS and BRANDT,
Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

Transferees of real property appeal from an order (1)
denying their motion to annul the automatic stay and
(2) finding that a judgment creditor did not violate the
automatic stay. We AFFIRM.

## I. *FACTS*

This appeal involves an unusual set of facts in that
neither appellants nor appellee were parties in interest
during pendency of this bankruptcy case. Instead, both
parties only became involved in the case over a year
after it was closed. Nevertheless, to arrive at the issues
raised in this appeal it is necessary to recount events
that occurred before, during and after the bankruptcy
case.

### A. *Pre-Bankruptcy Events*

On November 18, 1988, Daniel Cady ("Debtor") and
his wife, Maria Cady (collectively the "Cadys"),
purchased real property located at 657 Spyglass Road,
Valley Springs, California ("Spyglass"). Two deeds of
trust encumbered Spyglass. The first deed of trust,
held by Western Sunrise Mortgage Company, secured
a $70,000 promissory note. Western Sunrise
subsequently transferred its interest in this deed of trust
to Federal Home Loan Mortgage Corporation
("FHLMC"). The second deed of trust, held by
Geoffrey Rowland ("Rowland"), secured a $53,000
loan made to the Cadys.

### B. *Events During Pendency of the Bankruptcy Case*

Debtor commenced his bankruptcy case on May 11,
1993, by filing a petition *in pro se* under chapter 7 of
the Bankruptcy Code. [FN1] Maria Cady did not file
for bankruptcy. Debtor listed Spyglass in Schedule A
with a value of $135,000; Schedule D showed the
FHLMC and Rowland liens on Spyglass as totaling
$127,201. [FN2] In his "Statement of Intention,"
Debtor indicated that he would surrender Spyglass to
the deed of trust holders. Chapter 7 trustee Alfred
Siegel subsequently filed a no-asset report on March 1,
1994.

> FN1. Unless otherwise indicated, all chapter,
> section and rule references are to the
> Bankruptcy Code, 11 U.S.C. §§ 101-1330 and
> the Federal Rules of Bankruptcy Procedure,
> Rules 1001-9036.

> FN2. Spyglass appears to be vacation property
> and was not claimed as exempt.

Although the bankruptcy case was open and Spyglass
had not been abandoned, the Cadys nevertheless
proceeded to transfer their respective interests in
Spyglass to Rowland, the second deed of trust holder.
Maria Cady transferred her interest to Rowland via
quitclaim deed executed September 4, 1994, and
recorded October 24, 1994, and Debtor purportedly
transferred his interest to Rowland via grant deed
executed January 1, 1995, and recorded January 23,
1995. [FN3] Both of these transfers were made with

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

neither the knowledge nor approval of the bankruptcy court or the trustee. In return, Rowland signed a deed of full reconveyance of his deed of trust on January 6, 1995, which was recorded on January 23, 1995.

> FN3. Debtor claims that he transferred his interest to Rowland for three reasons: (1) because he "had no equity in the Property;" (2) because "the Trustee had already noticed his intention to abandon the Property;" and (3) because Debtor wanted "to save [Rowland] the time and expense of having to foreclose."

*177 Meanwhile, in a separate chain of events, creditor Prime Filmworks, Inc. ("PFI") filed a complaint against Debtor under section 523 of the Bankruptcy Code, seeking to have its unsecured claim declared nondischargeable. This adversary proceeding culminated on December 2, 1994, with a stipulated judgment ("Judgment") determining PFI's claim in the amount of $117,677.88 to be nondischargeable. On January 3, 1995, two days after the Spyglass deed to Rowland was executed, but before it was recorded, PFI recorded an abstract of the judgment ("Abstract") against Debtor in Calaveras County, California, where Spyglass is located.

Debtor received his discharge two weeks later and his bankruptcy case was closed by order filed March 30, 1995. As a result, any property not administered by the trustee was abandoned to the Debtor pursuant to section 554(c).

### C. Post-Bankruptcy Events: Appellants and Appellee Enter the Picture.

On April 10, 1996, nearly a year after Debtor's bankruptcy case was closed, PFI assigned all of its right, title and interest in the Judgment, including the Abstract, to appellee William A. Klapperman ("Klapperman").

On September 11, 1996, appellants Jeffrey Brian Palm ("Palm") and Dannielle Lynn Scapparo ("Scapparo") purchased Spyglass from Rowland. In connection with this transaction, Palm and Scapparo paid off the obligations secured by FHLMC's first deed of trust with a loan from Fleet Mortgage Corporation ("Fleet"). Fleet, in turn, took a new deed of trust on Spyglass which was recorded September 20, 1996.

Finally, in September of 1997, a year after Palm and Scapparo purchased Spyglass from Rowland,

Klapperman took steps to enforce the Judgment and execute on Spyglass after Debtor failed to make the first installment payment on the Judgment. During a series of unsuccessful settlement discussions between Klapperman and representatives of Fleet's title insurer, First American Title Insurance Company ("FATIC"), FATIC contended that (1) Fleet was entitled to step into former deed of trust holder FHLMC's first priority position through equitable subrogation and (2) the Abstract was void because its recordation violated the automatic stay in Debtor's bankruptcy case. Klapperman, in turn, argued that Fleet was not subrogated to FHLMC due to Fleet's actual and/or constructive knowledge of defects in the Cady-Rowland transfer.

On October 2, 2000, Palm and Scapparo filed motions seeking to (1) reopen the Debtor's bankruptcy case; (2) annul the automatic stay with regard to the transfer of Spyglass from the Debtor to Rowland; and (3) have the bankruptcy court determine that recordation of the Abstract violated the automatic stay. Klapperman filed oppositions to these motions.

Both motions came for hearing before the bankruptcy court on October 26, 2000. During oral argument, Palm and Scapparo conceded that the Debtor violated the automatic stay by transferring property of the estate, i.e., Spyglass to Rowland, and the court took that concession as a stipulation with Klapperman.

Although the court granted Palm and Scapparo's motion to reopen the Debtor's bankruptcy case (which is not an issue on appeal), it denied their motion for annulment of the automatic stay. Then, as the court prepared to conclude the hearing, Palm and Scapparo renewed their argument that PFI's recordation of the Abstract violated the automatic stay. After *178 entertaining oral argument on this issue, the Court found that recordation of the Abstract did not violate the automatic stay, relying on this court's decision in Watson v. City National Bank (In re Watson), 78 B.R. 232 (9th Cir. BAP 1987) ("Watson I").

Accordingly, on December 19, 2000, the Bankruptcy Court entered its "Order Re: Motion to Reopen and Annul the Automatic Stay," which mirrored the court's oral findings of fact and conclusions of law made during the October 26 hearing. Palm and Scapparo filed a timely Notice of Appeal on December 29, 2000.

### II. ISSUES

A. Whether the bankruptcy court abused its discretion in denying annulment of the automatic stay with regard

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

to the Debtor-Rowland transfer;

B. Whether the bankruptcy court erred as a matter of law in deciding that PFI did not violate the automatic stay by recording the Abstract; and

C. Whether the bankruptcy court was barred by the doctrines of collateral estoppel and law of the case from considering Issue B.

### III. STANDARD OF REVIEW

A bankruptcy court's decision to deny annulment of the automatic stay is reviewed for an abuse of discretion. _National Environmental Waste Corp. v. City of Riverside (In re National Environmental Waste Corp.), 129 F.3d 1052, 1054 (9th Cir.1997), citing Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 108 (9th Cir.1995)._ "A bankruptcy court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law." _In re Cybernetic Services, Inc., 239 B.R. 917, 918-19 (9th Cir. BAP 1999), aff'd, 252 F.3d 1039 (9th Cir.2001)._ "The Panel also finds an abuse of discretion if it has a 'definite and firm conviction the court below committed a clear error of judgment in the conclusion it reached....' " _Beatty v. Traub (In re Beatty), 162 B.R. 853, 855 (9th Cir. BAP 1994), quoting Mission Indians v. American Management, 824 F.2d 710, 724 (9th Cir.1987)._

A determination of whether the automatic stay provisions of section 362 have been violated is a question of law subject to _de novo_ review. _Groner v. Miller (In re Miller), 262 B.R. 499, 502 (9th Cir. BAP 2001); McCarthy, Johnson & Miller v. North Bay Plumbing, Inc. (In re Pettit), 217 F.3d 1072, 1077 (9th Cir.2000)._

Issues of collateral estoppel are reviewed _de novo._ _Watson v. Shandell, (In re Watson), 192 B.R. 739, 745 (9th Cir. BAP 1996), aff'd, 116 F.3d 488 (9th Cir.1997)._

### IV. DISCUSSION

This Panel has jurisdiction to hear appeals of final orders pursuant to 28 U.S.C. § 158(b). _Roderick v. Levy (In re Roderick Timber Co.), 185 B.R. 601, 604 (9th Cir. BAP 1995)._

**A. _The Court Did Not Abuse its Discretion in Denying Palm and Scapparo's Motion for Retroactive Annulment of the Automatic Stay._**

"[S]ection 362 gives the bankruptcy court wide

latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." _Schwartz v. United States (In re Schwartz), 954 F.2d 569, 572 (9th Cir.1992)._ By annulling the automatic stay, a court can validate an otherwise invalid transaction. _Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1425 (9th Cir.1985) (Nunc pro tunc_ effect of order of annulment validated foreclosure sale.)

**\*179** As explained previously, Palm and Scapparo stipulated that by transferring Spyglass to Rowland the Debtor took action against property of the estate in violation of section 362(a), thereby rendering the transfer void under _Schwartz, 954 F.2d at 571-72._ Palm and Scapparo obviously took this position in anticipation of having the bankruptcy court annul (or grant retroactive relief from) the automatic stay, in essence "blessing" the Debtor-Rowland transfer and validating the subsequent transfer to Palm and Scapparo. With legitimacy of their title in Spyglass thus restored, Palm and Scapparo would be on better footing to attack the Abstract.

We note, however, that despite Palm and Scapparo's position with regard to the Debtor's stay violation (and their motivations for taking that position), it is uncontested that the Debtor _voluntarily_ transferred Spyglass to Rowland; Rowland took no action whatsoever to foreclose on the property. The court made this finding at various points in the record, and the Debtor likewise admitted in a declaration filed October 19, 2000, that he "decided" to transfer Spyglass to Rowland. As such, it is questionable whether Debtor in fact violated section 362(a). [FN4]

> FN4. In _Schwartz, 954 F.2d at 574,_ the Ninth Circuit stated unequivocally that "[s]ection 362's automatic stay does not apply to sales or transfers of property initiated by the debtor." This statement is arguably _dicta,_ and is used to illustrate the difference between a creditor's seizure of estate property, which violates section 362, and a debtor's voluntary but unauthorized transfer of estate property, which must be undone through the trustee's avoidance powers under section 549. To that end, the Ninth Circuit explained that sections 362 and 549 are not in conflict; rather, "section 549 picks up where the automatic stay leaves off." _Id._ The issue of whether the Debtor-Rowland transfer is a nullity under section 362, or a transfer potentially avoidable under section

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

549, was not raised by either party in their papers or during oral argument, and is not an issue raised on appeal.

Notwithstanding the foregoing, Palm and Scapparo contend that the bankruptcy court abused its discretion by denying their motion for annulment of the automatic stay with regard to the Debtor's transfer of Spyglass to Rowland.

In *National Environmental Waste*, the Ninth Circuit noted that in deciding whether to grant relief from stay retroactively, many courts focus on two factors: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." 129 F.3d at 1055. However, in addition to considering these two factors, a court must "balance [ ] the equities in order to determine whether retroactive annulment is justified." *Id.* Such a determination necessarily involves a "case by case analysis." *Id.*, citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990).

As the record reflects, in denying annulment of the automatic stay the bankruptcy court applied the correct legal standard. It evaluated the particular facts of the case and balanced the equities involved in light of those facts, pursuant to *National Environmental Waste.* In particular, the court found: (1) when the Debtor transferred Spyglass to Rowland, it had not been abandoned and was still property of the estate; (2) the Debtor had no authority to transfer Spyglass to Rowland; (3) both the Debtor and Rowland knew of the Debtor's pending bankruptcy case at the time the Debtor made the transfer; (4) if the Debtor *had* moved for relief from stay to transfer Spyglass to Rowland, the Court would have denied the motion because Spyglass *180 was still estate property; and (5) the parties seeking retroactive annulment of the automatic stay, Palm and Scapparo, were not parties to the Debtor-Rowland transfer. Based upon these facts, the Court ruled that "the equities don't favor" annulment of the automatic stay.

After considering the court's careful and particularized analysis of the *Environmental Waste* factors, and several others, we are convinced that the court did not abuse its discretion by denying Palm and Scapparo's motion for annulment of the automatic stay.

**B. *PFI Did Not Violate the Automatic Stay by Recording the Abstract.* [FN5]**

FN5. In their moving papers before the bankruptcy court, Palm and Scapparo focused primarily on the issue of annulment of the automatic stay. During oral argument before the Panel, they conceded that the focus of their argument had changed to emphasize how PFI's recordation of the Abstract violated the *automatic stay. This change in priorities is of* no consequence, however, as the Panel is affirming the bankruptcy court's rulings on both points.

Klapperman's predecessor in interest, PFI, obtained the Judgment against the Debtor and recorded the Abstract. [FN6] Palm and Scapparo contend that recordation of the Abstract constituted an act against estate property in violation of the automatic stay in the Debtor's bankruptcy case. Consequently, they argue, the Abstract is void pursuant to *Schwartz*, 954 F.2d at 571 ("[V]iolations of the automatic stay are void, not voidable.") [FN7]

FN6. "[A] judgment lien on real property is created ... by recording an abstract of a money judgment with the county recorder." California Code of Civil Procedure ("CCP") section 697.310(a). Moreover, "[a]n abstract or certified copy of a money judgment of a court of the United States that is enforceable in this state may be recorded to create a judgment lien on real property...." CCP section 697.060(a).

FN7. Section 362(a) prohibits various actions from being taken against estate property, including enforcement of a judgment obtained prior to commencement of the case (362(a)(2)), acts to obtain possession of or exercise control over estate property (362(a)(3)), and acts to create, perfect or enforce a lien against estate property (362(a)(4)). *Schwartz* holds that violations of the automatic stay, *including the* aforementioned acts against property of the estate, are "void and of no effect." 954 F.2d at 572.

Nevertheless, binding authority is clear that "the automatic stay provisions of Section 362 do not preclude the execution of a judgment, which has been

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

**1128**

held by the bankruptcy court to be non-dischargeable, upon property of the debtor which is not property of the estate." *Watson I*, 78 B.R. at 235. In *Watson I*, creditor City National Bank ("CNB") filed a nondischargeability complaint against the chapter 7 debtors. Judgment was entered against the debtors after their answer was stricken. *Id. at 233.* Before the debtors received their discharge, CNB obtained a writ of execution and levied upon post-petition funds in the debtors' bank accounts. *Id.* In response, debtors filed an adversary proceeding seeking an injunction to prevent CNB from taking further action to collect on the judgment.

Although the court granted the injunction based upon a finding that CNB's actions violated the automatic stay, we reversed, reasoning that "[t]here is a lack of logic in allowing a creditor release from a discharge only to hold him in place as if he were still affected by the discharge or the prospect thereof." 78 B.R. at 235. [FN8] *181 See also California State University, Fresno v. Gustafson (In re Gustafson)*, 111 B.R. 282, 285 (9th Cir. BAP 1990) ("The automatic stay does not apply to prevent acts to collect claims that a bankruptcy court has determined to be nondischargeable under section 523(a)(8)."), *vacated and reversed on other grounds*, 934 F.2d 216 (9th Cir.1991).

> FN8. We note that there is a *second* published decision in the Watson bankruptcy case, decided less than a month after the BAP's decision, that addresses the identical issue and reaches the opposite result, finding that CNB's actions *did* violate the automatic stay. *Watson v. City National Bank (In re Watson)*, 78 B.R. 267 (Bankr.C.D.Cal.1987) ("*Watson II*"). However, this later published decision was apparently published without the court's knowledge of the prior BAP decision.
>
> At least one court has noticed the peculiar circumstances surrounding the two decisions: The *Watson* case had a somewhat unusual history. By a two to one vote, the Bankruptcy Appellate Panel reversed the entry of a preliminary injunction entered by Bankruptcy Judge Lisa Hill Fenning that had prevented a creditor from executing upon a judgment determining a debt to be nondischargeable. Twenty-three days and sixty-five pages in Volume 78 of West's Bankruptcy Reporter later, Samuel L. Bufford, a different bankruptcy judge in the same case, who was apparently unaware of the appeal, let alone of the panel decision, held that the collection

efforts of the creditor undertaken prior to the entry of the preliminary injunction violated the automatic stay.

*Cardillo v. Moore-Handley, Inc. (In re Cardillo)*, 172 B.R. 146, 149 (Bankr.N.D.Ga.1994).

The record here reflects that the bankruptcy court, aware of both *Watson* decisions, chose to disregard Judge Bufford's decision and follow the Bankruptcy Appellate Panel: "Well--to the extent that Judge Bufford's decision is inconsistent with the B.A.P., I'm--I follow the B.A.P."

The Panel follows *Watson I*, as it is bound by principles of *stare decisis* to follow its own decisions. *Ball v. Payco-General American Credits (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995); *State v. Rowley (In re Rowley)*, 208 B.R. 942, 944 (9th Cir. BAP 1997).

In this case, when PFI recorded the Abstract it did not take action against property of the estate. In particular, PFI recorded its Abstract pursuant to CCP section 697.340 (Interests in real property subject to attachment), which provides in relevant part:

> (a) A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the debtor pursuant to Article 1 ... of Chapter 1 at the time the lien was created....

As this section makes clear, an abstract of judgment recorded against real property "attaches only to the extent of the judgment debtor's interest in the property...." Miller & Starr, *California Real Estate*, § 31:46 at 578 (2d ed.1990); *Davis v. Perry*, 120 Cal.App. 670, 676, 8 P.2d 514 (1932) ("The law is well settled that the lien of a judgment does not attach to a naked title but only to the judgment debtor's interest in the real estate; and if he has no interest, though possessing the naked title, then no lien attaches.")

Here, at the moment the Debtor filed his petition, all of his property, including Spyglass, became property of the bankruptcy estate under section 541; Debtor held no more than record title to Spyglass. As *Collier on Bankruptcy* explains:

> Pursuant to subsection (a)(1) [of § 541], the estate includes all legal or equitable interests of the debtor in property, wherever located or by whomever held, as of the commencement of the case.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

....

Under section 541, once the estate is created, no interests in property of the estate remain in the debtor.

5 *Collier on Bankruptcy*, ¶ 541.04 at 541-12, 541-14 [15 ed.2000]. It is undisputed that on the date PFI recorded the Abstract, **\*182** January, 3, 1995, Spyglass was still property of the estate; it had not been abandoned, and the bankruptcy case had not yet closed (at which time all non-administered estate property re-vests in the debtor pursuant to § 554(c)). Consequently, since the Abstract attached only to property in which the *Debtor* (as opposed to the estate) had an interest, and the Debtor held no interest in Spyglass when the Abstract was recorded, PFI's lien could not attach. [FN9]

> FN9. Nor could any lien created by the recordation of the Abstract attach to property of the estate, whether or not the automatic stay applied. This is because the trustee, as equitable owner of Spyglass regardless of the state of record title, was not a party to the adversary proceeding that resulted in the Judgment.

In contrast, once the bankruptcy case closed, any non-administered property of the estate (including Spyglass) was abandoned pursuant to section 554(c), with title revesting in the Debtor. *In re Smith-Douglass*, 75 B.R. 994, 996 (E.D.N.C.1987), aff'd 856 F.2d 12 (4th Cir.1988); *Caso v. Bentley (In re Bentley)*, 120 B.R. 712, 717 (Bankr.S.D.N.Y.1990); *Beeter v. Tri-City Property Management Services, Inc. (In re Beeter)*, 173 B.R. 108, 124 n. 16 (Bankr.W.D.Texas 1994). At this moment, Debtor became revested with an "interest" in Spyglass to which Klapperman's Abstract attached by operation of CCP section 697.340(b). [FN10] [FN11]

> FN10. CCP section 697.340(b) provides:
> If any interest in real property in the county on which a judgment lien could be created under subdivision (a) is acquired after the judgment lien was created, the judgment lien attaches to such interest at the time it is acquired.

> FN11. At the moment Debtor became revested with title to Spyglass, title evidently passed from Debtor to Rowland and then, in

turn, to Palm and Scapparo under California's doctrine of "after-acquired title." *See* CCC § 1106 ("Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors."); *Noronha v. Stewart*, 199 Cal.App.3d 485, 489-90, 245 Cal.Rptr. 94 (1988) ("It has long been recognized ... that if a grantor purports to convey an interest in land which the grantor does not own, but afterwards acquires, the interest passes to the grantee at the time the grantor obtains it.")

As such, there remain questions concerning the status or priority of the Abstract relative to Palm and Scapparo's interest in (and Fleet's deed of trust on) Spyglass. We, however, are not called upon to address these issues, and expressly decline to do so.

Although Palm and Scapparo contend that this outcome is tantamount to a pre-petition creditor imposing a "springing lien" against the Debtor upon closure of the bankruptcy case, their position is without merit. A *post*-petition creditor could legally record an abstract of judgment against the Debtor based upon a post-petition debt without concern for the automatic stay. This creditor's abstract would then attach to any interest in real property that the Debtor subsequently acquires, whether through purchase, inheritance, abandonment under section 554(c), or some other means. There is no logical rationale justifying a different result where the recorded abstract of judgment is based upon a pre-petition creditor's nondischargeability judgment. Indeed, Palm and Scapparo cite no authority that would warrant a different result, we know of none, and we decline to create precedent for it.

We are not unmindful that recordation of the Abstract no doubt created a cloud on title to Spyglass, a cloud which may have interfered somewhat with efforts to sell the property, had the trustee sought to do so. Nevertheless, any such interference **\*183** under these circumstances is merely incidental to recordation of an abstract of judgment, and does not amount to an action against estate property in violation of the automatic stay.

Where, however, there is evidence that a creditor recorded an abstract of judgment with the intent to delay or otherwise interfere with a trustee's efforts to sell estate property, or a creditor uses a recorded

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

abstract to interfere with the administration of estate assets, such conduct will rise to the level of an *automatic stay violation*. In this instance, as there is no evidence of such conduct, recordation of the Abstract did not violate the automatic stay.

Based upon the foregoing reasoning, the Panel concludes that the bankruptcy court was correct when it determined that PFI's recordation of the Abstract was not an action taken against estate property and did not amount to a violation of the automatic stay.

**C.** *Neither Collateral Estoppel Nor Law of the Case Prevented the Bankruptcy Court From Deciding Whether PFI Violated the Automatic Stay.*

Klapperman argues in the alternative that Palm and Scapparo are barred under principles of collateral estoppel and law of the case from asserting that PFI violated the automatic stay by recording the Abstract. He raises these issues for the first time in this appeal. [FN12] Klapperman's sole basis for raising these doctrines is paragraph 10 of the Judgment, which provides:

> FN12. Normally the Panel will not review an issue raised for the first time on appeal. However, we may exercise our discretion to hear a new issue when it is "purely one of law" and will not prejudice the opposing party. *Columbia Steel Casting Co., Inc. v. Portland General Electric Co., 111 F.3d 1427, 1443 (9th Cir.1997)*. As these new issues involve purely legal determinations and are based upon a single paragraph contained in the Appellants' Excerpt of the Record, the Panel will exercise its discretion to consider them.

Nothing contained in the Stipulation or in this Stip Judg [sic], shall preclude PFI following the entry of this Stip Judg [sic], from having issued and recorded an Abstract of Stip Judg [sic] in any state, county, and/or other jurisdiction that PFI deems in its sole discretion appropriate....

Klapperman submits that this language permitted PFI to record the Abstract even if doing so amounted to a violation of the automatic stay. In essence, he argues that by signing the Judgment the court impliedly granted relief from stay to record the Abstract. Klapperman contends that since the Judgment is now final, Palm and Scapparo are collaterally estopped from raising the stay violation issue.

As the party asserting collateral estoppel, Klapperman has the burden of establishing all elements required for its application. *Watson, 192 B.R. at 747; In re Berr, 172 B.R. 299, 306 (9th Cir. BAP 1994)*. Under the federal standard, four elements must be met for collateral estoppel to apply:

(1) The issue sought to be precluded must be the same as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) It must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the final judgment.

*Berr, 172 B.R. at 306*.

In this case, it is clear that Klapperman has not established three of the necessary elements: that the issue was *184 the same; that the relief from stay issue was actually litigated; and that the determination of paragraph 10 was essential to the Judgment.

The language of paragraph 10 states only that nothing in the *stipulation* or *stipulated judgment* would preclude PFI from recording the abstract. On its face, the language does not grant PFI relief from stay to record the Abstract. If the court were granting relief from stay to record the abstract, it undoubtedly would have done so in a more straightforward and unambiguous manner. Thus, there was no identical issue that has now been precluded.

While it is true that the "actually litigated" element can be satisfied by a stipulated judgment under certain limited circumstances [FN13], Klapperman fails to satisfy this element precisely because of what was just noted, viz., the issues before the court were not the same on both occasions, so plainly what was deemed "actually litigated" was not the right to obtain relief from stay.

> FN13. *See Genel Co., Inc. v. Bowen (In re Bowen), 198 B.R. 551, 556 (9th Cir. BAP 1996)* (Stipulated judgment satisfies "actually litigated" element of collateral estoppel if there is "substantial participation" in the litigation by the party against whom judgment is entered.); *Berr, 172 B.R. at 306* (Stipulated judgment satisfies "actually litigated" requirement where the parties intended that the judgment be given preclusive effect, as inferred from either the judgment or the record.)

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Finally, the crux of the stipulated Judgment is the nondischargeability of Debtor's debt to PFI. There is no reason to believe that paragraph 10 of the Judgment was essential to the Judgment. _Chavez v. Director, Office of Workers Compensation Programs, 961 F.2d 1409, 1413 (9th Cir.1992)_ ("Collateral estoppel ... does not apply where the issue said to give rise to it was not essential to the previous judgment and was not litigated.") Indeed, paragraph 10 pertains to post-judgment collection remedies available to PFI (and now Klapperman) only after entry of the Judgment.

For all of the foregoing reasons, Klapperman's collateral estoppel argument is of no help to him.

Klapperman also contends that the stay issue is precluded by the law of the case doctrine, which prevents "a court ... from reconsidering an issue that has already been decided by the same court or a higher court in the same case." _Mendenhall v. National Transportation Safety Board, 213 F.3d 464, 469 (9th Cir.2000)_. However, as already explained, the record does not demonstrate that the court ever decided the relief from stay issue or, for that matter, that appellants were part of the lawsuit and are bound by it. Accordingly, the law of the case doctrine did not apply to prevent the court from considering the relief from stay issue.

### V. CONCLUSION

The court did not abuse its discretion by denying appellants' motion for annulment of the automatic stay. The court also did not err as a matter of law in finding that PFI did not violate the automatic stay by recording the Abstract. Moreover, neither collateral estoppel nor the law of the case doctrine prohibited the court from determining whether PFI violated the automatic stay. Consequently, we AFFIRM.