[No. B020539. Second Dist., Div. Four. Mar. 10, 1988.]

REGINALD NORONHA et al., Plaintiffs, Cross-defendants and Respondents, v.
RICHARD STEWART et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Frye & Spencer and Richard C. Spencer for Defendants and Appellants.

Brown, Baron & Gailen and Scott Gailen for Plaintiffs and Respondents.

OPINION

ROTHMAN, J.*—Defendants appeal a judgment pertaining to an encroaching wall that defendants built on plaintiffs' property. We reverse in part.

In 1978, defendants Richard and Mattie Stewart purchased a house in a newly constructed residential subdivision in San Pedro, the Terragona Homes. Defendants' lot, lot No. 11, was adjacent to and down a slight slope from lot No. 12 which would eventually be purchased by the plaintiffs. Shortly after moving in, defendants contacted the apparent owner or the

_____

* Assigned by the Chairperson of the Judicial Council.

adjacent lot No. 12—at that time, Lawrence Jett—about building a wall between their properties. Jett, along with two partners, had previously owned all the land in the undeveloped subdivision, but sold it to the developer who constructed the houses. As part of the sale, Jett was to get title to lot 12 after a house was built on the property. At the time defendants approached him about constructing a wall, however, Jett was not the legal owner of lot 12, but was merely entitled to it under contract.

As plaintiffs admit in their brief, this fact was unknown to defendants who erroneously believed that Jett was the legal owner of the property. Jett, who was guaranteed lot 12, was permitted to exercise complete control over the property and willingly agreed to allow defendants to build a wall.

The point of contention in this case is the slope between lots 11 and 12. Lot 11, belonging to the defendants, is slightly lower than lot 12, with a tapering slope between the two which reaches three to four feet in height at the rear of the lots. This slope lies entirely within lot 12 as the boundary between the properties runs along the bottom of the slope.

Neither Jett nor the defendants wished to build a wall following the properties' actual boundaries along the bottom of the slope, however, as this would provide no privacy to either lot. Anyone standing on lot 12 could look down into lot 11 and anything more than two or three feet high on lot 12 would be visible over the wall. Jett, therefore, agreed to allow defendants to construct the wall along the top of the slope, thus leaving the slope on defendants' side of the wall and encroaching on lot 12 from about four inches in the front to eight feet in the back.

Jett testified that he intended to grant defendants a written easement on the encroachment property and invited them to come around to his office to obtain the proper form. No written easement was given, and, in fact, Jett was not the legal owner of the property at the time he gave his permission to build the wall on lot 12. Defendants thereafter constructed a specially reinforced wall along the top of the slope, paying the entire $8,000 cost themselves.

After the wall was constructed, Jett obtained legal title to the property, but held the lot only five days before selling it to plaintiffs. Eight months after moving in, plaintiffs demanded that defendants tear down the wall at their own expense and restore the slope to them. Defendants refused and this case ensued.

Upon hearing the evidence, the trial court ruled that defendants had no easement or license to construct the wall as Jett was not the legal owner of

the property at the time he gave his permission. Balancing the relative hardships, the court permitted the wall to remain standing until defendants sell the property, at which time it appears defendants must pay for the wall's removal. The defendants were also ordered to pay $5,680 to plaintiffs as damages for the use of the property and to remove a gazebo constructed on the encroached property.

## I

In rendering its decision, the trial court relied on the time honored doctrine that no grantee can have better title than the grantor. Since Jett had no present interest in the property at the time he gave his permission to construct the wall, the court reasoned then that no interest in the property could have passed to the defendants.

It has long been recognized, however, that if a grantor purports to convey an interest in land which the grantor does not own, but afterwards acquires, the interest passes to the grantee at the time the grantor obtains it. "The general rule is that if the grantor in a conveyance of real property has no title, a defective title, or an estate less than that which he assumed to grant, but subsequently he acquires the title or estate he purported to convey or perfects his title, the after-acquired or perfected title will inure to the grantee or his successors by way of estoppel, *i.e.,* the grantor is estopped to deny that the after-acquired title passed by his conveyance." (1 Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1974) § 4.20, p. 142.) The effect "is the same as if it were written upon the face [of the instrument] that the grantor conveyed all the estate which he then possessed or which he might at any time thereafter acquire. [Citations.]" (*Younger* v. *Moore* (1909) 155 Cal. 767, 773 [103 P. 221]; accord *Warburton* v. *Kieferle* (1955) 135 Cal.App.2d 278, 284 [287 P.2d 1].)

This doctrine of "after-acquired title" is recognized in California and has been partially codified into Civil Code section 1106, which provides: "Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors."

This statutory rule is limited to grants of fee simple and is therefore not applicable to the case at hand.[1] The common law rule, however, survived

---

[1] Most of the California cases that have addressed this issue have also done so in the context of interests conveyed by deeds for an estate in fee simple and, therefore, are not relevant to the fact pattern presented here. (See, e.g., *Schwenn* v. *Kaye* (1984) 155 Cal.App.3d 949 [202 Cal.Rptr. 374]; *Klamath Land & Cattle Co.* v. *Roemer* (1970) 12 Cal.App.3d 613 [91 Cal.Rptr. 112]; *Leggio* v. *Haggerty* (1965) 231 Cal.App.2d 873, 881 [42 Cal.Rptr. 400].)

the enactment of the statute (1 Ogden's Revised Cal. Real Property Law, *op. cit. supra*, § 4.20, p. 143), and is considerably broader: "[T]he common-law rule of after-acquired title is based upon the doctrine of estoppel, that is, that the grantor has led the grantee to believe that a certain estate or title was being conveyed. When the grantor subsequently acquires the title or estate he purported to transfer, he is estopped to deny its passage to the grantee. Therefore, the common-law rule is not limited to fee simple conveyances but applies to the transfer of *any* estate when the grantee initially receives a lesser interest than he was induced to believe he had received." (2 Miller & Starr, Current Law of Cal. Real Estate (1977) Deeds, § 14:56, p. 588, italics in original, fn. omitted.)

 Contrary to the trial court's finding, therefore, the fact that Jett did not own the property at the time he attempted to grant the easement does not prevent the defendants from asserting an interest in the land. Under the doctrine of after-acquired title, once Jett became the owner of the property, he and his successors were estopped from contesting the passage of the easement to the defendants. (6A Powell, The Law of Real Property (1982) ¶ 927, p. 84-113; 1 Ogden's Revised Cal. Real Property Law, *op. cit. supra*, § 13.21, pp. 552-553.)

The plaintiffs argue that no easement exists that can pass to the defendants as Jett's permission to build the wall was never reduced to writing. While Jett's oral promise may have lacked the formal requirements necessary to create an easement, it undeniably constituted a license.[2] And where a party has made substantial expenditures in reliance on a license, the license acts, for all purposes, as an easement, estopping the grantor and his successor from revoking it. As the court observed in *Cooke v. Ramponi* (1952) 38 Cal.2d 282, 286 [239 P.2d 638]: "it is well settled in this state that 'where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for.'"

While recognizing this, plaintiffs argue that defendants' reliance on the license was not reasonable since they made only one attempt to perfect an easement, and that plaintiffs should not be estopped from revoking the license as they had no notice that the license existed. Neither argument is

---

[2] Arguably, this oral promise could have constituted an easement if executed and based upon a valuable consideration—in this case, defendants' promise to bear the entire cost of building the wall themselves. (*Cooke v. Ramponi, supra*, 38 Cal.2d at p. 289; *Wilkes v. Brady* (1927) 84 Cal.App. 365, 369 [258 P. 108].)

meritorious. First, there is nothing inherently unreasonable in a party's reliance on a promise or the failure to insist on a writing. Indeed, defendants made a far greater effort to perfect their interest here than is evidenced in other cases granting irrevocable licenses. (See *Cooke* v. *Ramponi, supra,* 38 Cal.2d 282; *Stoner* v. *Zucker* (1906) 148 Cal. 516 [83 P. 808].) Secondly, as to plaintiffs' claim that they were unaware that the wall was on their property, Lawrence Jett repeatedly testified that he informed plaintiffs of this fact and showed them the location of the actual boundary. Nor is plaintiffs' knowledge required for the license to become irrevocable. Once defendants have expended substantial effort in execution of the license, "the license will continue for so long a time as the nature of it calls for." (*Cooke* v. *Ramponi, supra,* 38 Cal.2d at p. 286.) Defendants accomplished this before Jett became the owner of the property. Once Jett acquired the property, the license was binding on him and his successors in interest, the plaintiffs.

Plaintiffs finally argue that no estoppel should apply as defendants had notice that Jett was not the true owner of the property. "When the grantee has knowledge or notice that his grantor does not have full title to the land conveyed, he is not misled to his prejudice and the general rule of estoppel is not applied." (1 Ogden's Revised Cal. Real Property Law, *op. cit. supra,* § 4.22(b), p. 145.) "Because the common-law rule is based upon estoppel, it does not apply in favor of a grantee who has notice or knowledge that the grantor does not have the full title which he purportedly conveyed." (2 Miller & Starr, Current Law of Cal. Real Estate, *op. cit. supra,* Deeds, § 14:56, p. 588, fn. omitted.)

The plaintiffs admit in their brief, however, that the defendants erroneously believed that Jett was the owner of lot 12. Moreover, defendant stated as much when asked who he believed the owner of lot 12 was.

Accordingly, we conclude that the trial court erred in determining that no irrevocable license existed.

## II

In addition to those portions of its judgment relating to the wall and the use of the encroached land, the trial court also ordered defendants to remove a gazebo partially constructed on the disputed slope. The court stated: "Defendants not only built the wall, but a gazebo which as stated above also encroached on a portion of lot 12. They further wilfully and intentionally embellished the gazebo with trellises, large slats and heavy foliage. This appears to the court to be an effort to totally block the view the plaintiff would have of the harbor area. The court determines that there was in fact a

view from lot 12 which was sought to be protected. This determination is based on Mr. Jett's testimony wherein he indicated to the Stewarts, defendants herein, that they should not build the wall, the height of which would block his view from lot 12." The court then concluded that the removal of the gazebo would not constitute a disproportionate hardship to defendants and ordered the structure taken down.

■ As a general rule, a landowner has no natural right to an unobstructed view and the law is reluctant to imply such a right (*Pacifica Homeowners' Assn.* v. *Wesley Palms Retirement Community* (1986) 178 Cal.App.3d 1147, 1152 [224 Cal.Rptr. 380]), although this right may be created by an express easement between the parties. (*Petersen* v. *Friedman* (1958) 162 Cal.App.2d 245, 247-248 [328 P.2d 264].) The record in the instant case, however, does not support such a condition in the easement. Lawrence Jett testified that: "Part of my understanding with Mr. Stewart [the defendant] was I did not want the wall to reach a particular height that would interfere from being in the house looking out. . . ." But Jett also testified that the defendants had done what they had agreed to do and that the wall was not an obstruction. As to the encroached land, Jett stated that he had granted defendants a right to make use of it, and that there were no other restrictions in their agreement. No conditions were expressed limiting the use that could be made of the encroached property, other than the height of the wall. In light of this, a height limit on the trellises and bushes that defendants may place on the slope is not supported by substantial evidence. No restrictions were made on the landscaping of the slope and the agreement as to the height of the wall is insufficient to impose a limitation on the structures or foliage that may be placed on the encroached property.[3]

## III

Defendants further contend that the trial court erred in excluding evidence on their cross-complaint for trespass, injury to timber and conversion. This cross-complaint arises out of the alleged cutting of defendants' trees by surveyors employed by the plaintiffs. In addition to planting trees on their own property, defendants had also planted them on a portion of the property behind their lot belonging to a third party. This encroachment was settled before trial. The defendants cross-complained against the plaintiffs, however, seeking treble damages for injury to timber, alleging that surveyors employed by the plaintiffs had entered this other lot and cut the trees defendants had planted there. The defendants point out that although the

[3] It should also be noted that ordering the gazebo removed from the slope is not likely to be effective in restoring the plaintiffs' view. The defendants need only move the gazebo a few feet onto their own property where it can be just as much an obstruction. The same result will no doubt occur as the trees on defendants' property mature.

property was not theirs and they may have had few rights against the true owner, this does not affect their rights against the plaintiffs who had no claim to the property whatsoever. The defendants protest that when they questioned the surveyor specifically about the trees on the adjacent lot, the trial court sustained an objection that this matter pertained only to the settled suit and had no relevance to the case at hand.

We see no conceivable prejudice resulting from the exclusion of the evidence relating to the trees defendants planted on the adjacent lot. The surveyor allegedly responsible for cutting the trees had previously testified that the only trees cut were on plaintiffs' lot on plaintiffs' side of the wall. Considerable effort was devoted to this inquiry, in which the surveyor simply reiterated his statement. We can find no harm, therefore, arising from the trial court's ruling, limiting further questioning on this matter.

As we are reversing the judgment except as it relates to defendants' cross-complaint, we need not address defendants' other alleged errors.[4]

That portion of the judgment denying defendants' cross-complaint is affirmed. In all other respects, the judgment is reversed. Appellants to recover costs.

McClosky, Acting P. J., and George, J., concurred.

---

[4] Defendants contend that the trial court abused its discretion by allowing this case to go to trial after the expiration of the five-year statute in Code of Civil Procedure section 583, subdivision (a). We see no abuse of discretion here as this case was set for trial one month prior to the expiration of the statute and had been trailing during that time while waiting for a courtroom to open up. Congestion of the court calendar is a valid exception to the mandatory dismissal rule. (*Goers* v. *Superior Court* (1976) 57 Cal.App.3d 72, 74-75 [129 Cal.Rptr. 29].) Plaintiffs informed the clerk of the court that the five-year rule was set to expire and acted with reasonable diligence in trying to bring the case to trial prior to that time.