[No. B162920. Second Dist., Div. Six. Mar. 2, 2004.]

OCEAN VIEW ESTATES HOMEOWNERS ASSOCIATION, INC., Plaintiff and Appellant, v.
MONTECITO WATER DISTRICT, Defendant and Respondent.

398

COUNSEL

Herb Fox for Plaintiff and Appellant.

Price, Postel & Parma and David K. Hughes for Defendant and Respondent.

OPINION

GILBERT, P. J.—A water district wishes to cover a reservoir. It issues a mitigated negative declaration (MND). The MND fails to identify and discuss significant environmental impacts. A homeowners association brings a writ of mandate to compel the water district to prepare an environmental impact report (EIR) for its project. The trial court denies the petition.

■ Here we hold, among other things, mitigation measures taken after a MND is issued do not satisfy the California Environmental Quality Act (CEQA) (Pub. Res. Code, § 21000 et seq.) requirements. We reverse.

## FACTS

The Ortega Reservoir is located in the Santa Barbara County community of Summerland. It provides potable water for, among other entities, the Montecito Water District (District). The District is responsible for maintaining the reservoir's water quality. The Department of Health Services has encouraged the District to cover the reservoir to prevent water quality problems. In 1998, the District decided to cover the four-acre reservoir with an aluminum roof.

The District, as the lead agency for the purposes of environmental review, ordered an initial study of the project's environmental impacts. The study

found flooding to be of potential significance because the project would increase the impervious surface area and thus increase runoff. The study found no significant aesthetic impact.

After a public review period and a hearing, the District decided the project does not require an EIR. Instead, the District issued a MND. To mitigate the potential for flooding, the MND stated: "The Ortega Reservoir Upgrade Project shall incorporate design measures to detain excess runoff from the increase[] of impervious surface at the site and shall meter releases so that no modification to the downstream 100-year flood plain will result."

Ocean View Estates Homeowners Association (Ocean View) filed a petition for writ of mandate to direct the District to vacate its approval of the project. Ocean View is a 70-acre common interest development consisting of 11 homes near the reservoir. Several of the homes are located in the hills above the reservoir, the rest are located below the reservoir.

## DISCUSSION

### I

■ An EIR provides detailed information about the likely effect a proposed project may have on the environment, lists ways in which significant effects might be minimized and indicates alternatives to the project. (Pub. Resources Code, § 21061.) An EIR is required whenever there is a " 'fair argument' " that significant impacts may occur. (*Quail Botanical Gardens Foundation, Inc. v. City of Encinitas* (1994) 29 Cal.App.4th 1597, 1602 [35 Cal.Rptr.2d 470].)

■ When there is no substantial evidence before the lead agency that the project may have a significant effect on the environment, a negative declaration instead of an EIR, is appropriate. (Pub. Resources Code, § 21080, subd. (c)(1).) When the initial study identifies potentially significant effects on the environment, but revisions in the project plans would avoid or mitigate the effects to insignificance, a MND is appropriate. (Pub. Resources Code, § 21064.5.)

■ Because a negative declaration ends environmental review, the fair argument test provides a low threshold for requiring an EIR. (*Citizen Action To Serve All Students v. Thornley* (1990) 222 Cal.App.3d 748, 754 [272 Cal.Rptr. 83].) The standard on appeal is whether substantial evidence in the record supports a fair argument that the project may have a significant environmental impact. (*Ibid.*) If so, an EIR is required; if not, a negative declaration will suffice. (*Ibid.*)

## II

Ocean View contends there is substantial evidence to support a fair argument that the mitigation measures employed to prevent downstream flooding may themselves have a significant environmental impact.

Ocean View does not contest that the mitigation measures designed to prevent downstream flooding are adequate. Those measures involve retaining excess runoff produced by the project at the reservoir site. Ocean View believes, however, there is a fair argument that the plan to retain runoff at the site may itself have a significant environmental impact. The excess runoff may flow into the reservoir causing contamination of the drinking water, or if the excess is prevented from flowing into the reservoir, dam failure may result.

To support its argument, Ocean View points to memoranda from the District's engineering consultants. One engineering consultant warned that should the 24-inch outflow pipe become blocked, water could backflow into the reservoir. This could cause contamination of the drinking water. Another engineering consultant discussed a proposal to use flap gates to prevent backflow into the reservoir. He recommended against the use of flap gates because they might cause dam failure. He stated, "The consequences of dam failure (loss of life) would appear to outweigh consequences of storm water contamination." Instead of flap gates, the engineer recommended a high water alarm system.

The documents were in existence prior to the District's decision to issue the MND. They provide substantial evidence to support a fair argument that significant impacts of contamination or dam failure may occur. But the MND does not discuss or even identify the impacts.

The District argues that changes in the project design have mitigated to insignificance the potential for contamination and dam failure. That may be true, but the argument misses the point of environmental review. Environmental review derives its vitality from public participation. That is what is missing here. The public was never informed of the significant impacts discussed by the District's consultants. Those impacts were omitted entirely from the review process.

The District argues that design changes should not require environmental review. That argument also misses the point. Mitigation measures stated in a MND need not specify precise details of design. Having recognized a significant environmental impact and having determined that mitigation measures may reduce the impact to insignificance, the MND may leave the details

to engineers. In such a context, the design may change many times without requiring further environmental review. Here, however, the MND fails even to recognize the problem. Nothing in the MND requires any measures to mitigate contamination or dam failure.

## III

Ocean View contends substantial evidence supports a fair argument that the project may have a significant negative aesthetic impact.

■ Any substantial negative effect of a project on view and other features of beauty could constitute a significant environmental impact under CEQA. (*Quail Botanical Gardens Foundation, Inc. v. City of Encinitas, supra*, 29 Cal.App.4th at p. 1604.) Appendix G to the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.)[1] recommends that the lead agency consider the following questions:

". . . Would the project:

"a) Have a substantial adverse effect on a scenic vista?

"b) Substantially damage scenic resources, including, but not limited to, trees, rock outcroppings, and historic buildings within a state scenic highway?

"c) Substantially degrade the existing visual character or quality of the site and its surroundings?

"d) Create a new source of substantial light or glare which would adversely affect day or nighttime views in the area?" (*Id.* at § 15387.)

Presently, the reservoir looks like a very large swimming pool trying to pass as a lake. An EIR prepared by the City of Santa Barbara for a similar reservoir stated in part: "[T]he sight of clear blue water in a densely vegetated area with diverse topographic relief and an overall green framework from landscaping, provides a striking and unique visual feature, albeit . . . artificial." The proposed pitched aluminum cover would extend over four acres and be 15 feet tall at its highest point. The cover would have a semi-reflective mill finish, which over time would oxidize to a dull gray. Landscaping plans will shield adjacent homes from a view of the reservoir and cover. The District concedes, however, that the reservoir and cover will be visible from two homes that are at higher elevations.

---

[1] All further reference to CEQA Guidelines are to this code and title.

The president of Ocean View and neighboring property owners have expressed concerns to the District about the aesthetic impacts of the project. The Santa Barbara County Planning and Development Department commenting on a draft of the initial study stated in part: "If the proposed roof structure can be seen from public or private view areas, particularly from any of the surrounding recreational trails, then appropriate mitigation should be developed (appropriate landscape screening, painting the roof to better blend in with the surrounding terrain if feasible)."

The District argues that private views are not environmentally significant under CEQA. The District cites *Noronha v. Stewart* (1988) 199 Cal.App.3d 485, 492 [245 Cal.Rptr. 94], for the proposition that there is no common law right to an unobstructed view. But *Noronha* is not a CEQA case. The District cites nothing in CEQA that relieves it from considering the impact of the project on private views. To say there is no common law right to a private view, is not to say that the District is relieved from considering the impact of its project on such views.

That a project affects only a few private views may be a factor in determining whether the impact is significant. But here there is more involved than private views. Although the surface of the reservoir cannot be seen from the public trails, the record contains photographic evidence from which a fair argument can be made that the cover will be visible from public trails. Because the pitched cover at its highest point will be 15 feet from the surface, it appears that at least a side view of the cover will be visible above the dam face. As we view the District's proposed landscaping plans, there will be no landscaping on the dam face to screen the side view of the cover.

The District argues that expressions of concern, questions or objections do not constitute substantial evidence of an adverse environmental impact. (Citing CEQA Guidelines, § 15384, subd. (a).) The District points out that in *Quail Botanical Gardens Foundation, Inc. v. City of Encinitas, supra,* 29 Cal.App.4th at page 1605, substantial evidence of view obstruction was based on photographs with story poles and the testimony of an expert surveyor.

■ It is true there is no such evidence here. But we are not considering a matter as objective as whether the project will obstruct views. Here we are concerned with the overall aesthetic impact of an aluminum cover. Consideration of the overall aesthetic impact of the cover by its very nature is subjective. Opinions that the cover will not be aesthetically pleasing is not the special purview of experts. Personal observations on these nontechnical issues can constitute substantial evidence. (See *Oro Fino Gold Mining Corp. v. County of El Dorado* (1990) 225 Cal.App.3d 872, 882 [274 Cal.Rptr. 720] [residents' complaints about noise can constitute substantial evidence].)

If it were merely the matter of expressions of concern by one or two people, we might agree that there is no substantial evidence of a negative impact. But here the county urged the District to adopt mitigation measures if the cover can be seen from public or private view areas. The District did adopt landscape screening, but there is substantial evidence that the cover will be visible from some private and public view areas, despite the screening. The evidence here goes beyond a few people expressing concern about the aesthetics of the project. There is substantial evidence to support a fair argument that the project may have a significant adverse aesthetic impact.

The judgment is reversed with directions to the trial court to issue a writ of mandate ordering the District to vacate its decision certifying the MND. Costs are awarded to appellant.

Coffee, J., and Perren, J., concurred.